THE STATE, ex rel. JONATHAN H. MORGAN, Overseer, &c., *vs*, THE MONMOUTH PLANK ROAD COMPANY.

1. The duty of opening, working, and clearing out the public highways is enjoined by law on the overseers of highways; and no act or neglect of the township committee can absolve them from the duty, or authorize anybody to obstruct or close a public road.

2. It is the duty of the committee to assign to the overseers in writing their several limits and divisions of the highways; but if the committee neglect to do so, the overseers are to observe and conform themselves to such assignments as have at any time theretofore been made.

3. If the overseer neglects his duty, and the township is fined or amerced for the default, the overseer may be compelled to refund the money, or may be proceeded against for the default in the first instance.

4. If a township neglects to raise money for the roads, the overseers are required to call out the inhabitants to work them.

5. A *mandamus* will not be granted at the relation of an overseer of highways to compel the removal of an obstruction placed in a public road by a party under the authority of a legislative act, unless the act, in that respect, be unconstitutional.

6. The grant of power to a plank road or turnpike company to appropriate a public road to their use, upon obtaining the consent of a majority of the voters of the township, is not a delegation by the legislature of the law-making power to the people.

7. Whether the grant of such power to such a company to take the land which the road occupied for their own use, on obtaining the consent of a majority of the land-owners, without compensation to such as do not consent, is constitutional. *Query*.

8. But if it is, none but a land-owner whose land is so taken without compensation can complain.

9. An act is not necessarily void because it contains an unconstitutional feature; it is operative for all purposes except that in which it comes in conflict with the fundamental law; and in that particular the difficulty may be removed or those affected by it may not choose to complain, in which case the courts would not interfere.

10. A *mandamus* is never allowed where there is another complete and perfect remedy provided for the mischief complained of.

———

At the last February Term, Jonathan H. Morgan, alleging himself to be one of the overseers of highways in the township of Marlborough, in the county of Monmouth,

obtained a rule to show cause why a *mandamus* should not issue to the Monmouth Plank Road Company, commanding them to remove a certain fence, alleged to have been placed by them across the public highway leading from Freehold to Keyport, said fence being on that part of the road within the district assigned to the relator; and leave was given to both parties to take affidavits, to be used on the argument of the rule. And the counsel for the relator now moved to have this rule made absolute, upon the following facts, which were disclosed by the affidavits taken and read, to wit:

It appeared, by three several returns, that in 1819 and 1824, public roads of three and four rods wide were laid out, extending, by connection with each other, from Freehold through the township of Marlborough, &c., to Keyport, which had been used as one continuous road by the public, and worked and maintained according to law up to the time of the interruption complained of.

That, on the 20th February, 1850, the legislature passed an act incorporating the Monmouth Plank Road Company, with a capital of $100,000, to be divided into shares of $25 each, with authority to construct a plank road, not exceeding sixty feet in width, from Freehold, through Marlborough, to Keyport, and to enter upon and take lands, &c. ; provided that the said corporation should pay, or make a tender of payment for all damages for the occupancy of lands through which the road should be laid out, before breaking ground in the premises, unless the consent of the owners should be first had ; and with the usual provision for taking the necessary lands by appraisement, in case they could not agree with the land-owners ; and with the power to demand and receive certain tolls for traveling on said road, &c.

In September, 1851, proceedings were had, by which one rod in width on the north side of said public road was vacated, and subsequently the company constructed a plank road under the provisions of their charter, taking

for that purpose this one rod and an adjoining rod from the land-owners ; so that the plank road lay, on its entire route, alongside of the remaining public road.

In March, 1855, a supplement to the act to incorporate the plank road company was passed, by which the company was empowered to take and appropriate the said public road, in each township, to their own use, provided they obtained the approval of a majority of the voters of such township and a majority of the land-owners adjoining the said road in such township; and that when such approval should be had, the company were authorized to make such excavations, embankments, bridges, and all other works necessary and suitable for the uses of the company, open the same to its full width, and convert the plank road into a turnpike, provided the said turnpike should be at least thirty feet wide, sufficiently arched and drained, and eightteen feet thereof sufficiently bedded and faced with stone, &c. ; and were empowered to charge toll, &c. And provision was made for suspending the right to charge toll when the said turnpike should not be in the condition required by the charter.

The consent of a majority of voters and land-owners in the township of Marlborough having been obtained, as required by the charter, the company, in the month of May or June, 1855, erected the fence complained of across the old public road at their toll-house in Marlborough, and compelled all persons traveling on the road to pass through their gate, and pay toll.

This fence is on that part of the public road which, for several years prior to the spring of 1856, had been designated by the township committee as district No. 7, and assigned to Jonathan H. Morgan, the relator, who was one of the overseers of highways elected in the township, to keep in repair; and he was in charge of this district in June, 1855, when the fence was erected, and in February last, when he applied for the rule to show cause in this case.

Morgan was re-elected one of the overseers of highways of the township at the spring meeting in 1856; but when the town committee met, they appear virtually to have abandoned that part of the road of which the company had thus taken possession.

Nicholas Cottrell, one of the township committee, testifies that there was no money apportioned to district No. 7 by the town committee this year; a majority of the committee said that the plank road company had taken possession of it, and there was no use wasting money upon it; there was no new assignment made of district No. 7 this year; the portion of the road from Wilson's mill to the Middlesex line, formerly a part of the road in district No. 7, was set off into another district this spring, so that all that is left of what was district No. 7 is the part now occupied by the plank road company. Morgan has not worked it since the fence was put up, though he scraped it just before.

Charles Conover, clerk of the township, testifies that there is no district No. 7 in the township of Marlborough at this time. Jonathan H. Morgan is not overseer of any district No. 7 in Marlborough at this time, nor of any other district. The committee struck off district No. 7, and what was left of district No. 7 was attached to another district. I think it was put on to Thomas Gearan's district, which was No. 6.

John W. Ely, another member of the town committee, testifies—the question being asked, was district No. 7 abolished this spring? "I do not know whether you call it abolished or not; the committee did not apportion any money to it. Mr. Conover, the clerk, had the name of Mr. Morgan down to that district, and he said there was no use of its being there, as he had no district; and it was stricken off on the book by the direction of the committee. It was determined that the district was no longer necessary, as the company had charge of it, and there was no use of spending money on it; and the balance of

Morgan v. Monmouth Plank Road Co.

what was left was put in another district. There are six road districts in the township of Marlborough at this time. The two rods of the old public road from Marlborough to the Raritan line, alongside of the plank road, is not in either of these six districts. At the last town meeting, the people, by their vote, declared there to be seven districts. Mr. Morgan was elected in district No. 7, this spring, as overseer, and confirmed by the people at town meeting. No district was assigned to him this spring."

Argued at June Term, 1856, before POTTS and VREEDEN-BURGH, Justices; *R. Adrain,* for the relator, *W. L. Dayton,* for the company.

The opinion of the court was delivered by

POTTS, J.   The object of this application is to compel the Monmouth Plank Road Company to remove a fence, by them erected, off and from a certain public road in the township of Marlborough, in said county, whereby, it is alleged, they hinder and obstruct the inhabitants and others accustomed to use said road from freely traveling over the same.

The proceeding is instituted at the relation of Jonathan H. Morgan, who alleges that he is one of the overseers of the highways of the said township of Marlborough, and that the portion of the road in which this obstruction has been placed is within the limits and divisions of the highways of the said township assigned and appointed to him by the township committee, as such overseer, for opening, clearing out, working, amendment and repair; and that by reason of said obstruction being placed in the said road by said company, the inhabitants are prevented from using said public road, and he, as such overseer, is deterred from opening and working the same.

When the rule to show cause was granted in February Term last, the parties had leave to take affidavits, &c., in order to bring the facts of the case before the court; and

now, upon the argument of the rule, the counsel for the company raises a preliminary objection to making the rule absolute, arising from the facts disclosed. He insists that the relator is not in a situation to ask for this remedy against the company, for the reason that he comes in his official character as an overseer of the highways, alleging that the obstruction is in a portion of the public road assigned to him as such overseer, and that the fact turns out not to be so. This question is, therefore, first to be disposed of.

That Mr. Morgan has been legally elected one of the overseers of highways in and for the township of Marlborough the present year, is beyond a question; and that for several years, and up to the spring of this year, the district No. 7 has been regularly assigned to him, satisfactorily appears. It is true that the township committee, this spring, set off part of this road, called district No. 7, to the district No. 6, assigned to Mr. Gearan, another overseer; that they did not assign the remaining part, on which the obstruction complained of is erected, to any one, and did not appropriate funds for working and keeping it in repair; and, so far as their action is concerned, they may be considered as having virtually abandoned it to the plank road company. But the township committee have no power to vacate a public highway, and no act of theirs can affect or impair the public right to the use of such highway; nor can any neglect or refusal of the committee to assign any public road in the township to an overseer, or appropriate money to work it, authorize anybody to close the road, or place obstructions in it. Nor can such neglect or refusal absolve the overseers from the duty enjoined upon them by law to open, clear out, and work the public roads of the township.

The duty of the overseers, says Ch. Just. Ewing, in *The State* v. *Holliday*, 3 *Halst.* 208, to open, clear out, and work the roads, is imposed, not by an order of the township committee, but by an act of the legislature. The act,

not an order of the committee, enjoins the overseer to open, clear out, amend, or repair, as the exigency may require.

The language of the act concerning roads (*Rev. Stat.* 522, §§ 20, 21, 22,) is very explicit. The committee are authorized and directed to assign and appoint in writing to the overseers of the highways, respectively, their several limits and divisions of the highways within such township, for opening, clearing out, working, amendment, and repair; and the said overseers are hereby commanded to observe and conform themselves to such assignment. But the same section of the act provides that in case the township committee of any township shall neglect or refuse to assign and set off the divisions and limits of the highways to the overseers of the highways, then it shall be the duty of the said overseer or overseers of the highways to observe and conform themselves to such assignments as have at any time heretofore been made in the said township. And so, though it is made the duty of the town committee to superintend the expenditure of any moneys raised by tax for the use of the township, or which may arise from the balance of the accounts of any of the township officers, (*Rev. Stat.* 1024, § 12,) yet it is as imperatively made the duty of the overseers of highways to hire laborers, &c., to open, clear out, make, work, amend, repair, and keep in good order the highways within their respective limits and divisions, &c. *Rev. Stat.* 523, § 21. And the 22d section enacts that the necessary money for the purpose shall be granted, assessed, collected, and raised, &c.; and enjoins it upon the townships that they be careful to have money in hand ready and sufficient for these purposes.

If the overseers neglect the duty enjoined upon them, and the township be fined or amerced for not opening and clearing out, or for the badness of their roads, &c., the overseer within whose limits the default is, is to refund the money paid in consequence of the fine or amerce-

ment, with costs, or he may be proceeded against for the default in the first instance. *Sections* 24, 43. And if a township which works its roads by hire neglects or refuses to raise and furnish to the overseer sufficient for the opening, clearing out, working, making, amending, repairing, and keeping in good order the highways, &c., within their respective limits, the overseers are required to call out the inhabitants and work the roads by labor. *Section* 42.

It is, then, perfectly clear that the action of the township committee, in declining to assign the portion of the public road in question to the overseer the present year, and in neglecting to make provision for working it, does not affect the obligations and duties of that officer ; and that the relator, having been legally elected one of the overseers of the highways for the township of Marlborough, and that part of the road in which the obstruction has been placed having been heretofore assigned to him, and not subsequently assigned to anybody else, he remains charged with the legal duty of opening, clearing out, and keeping it in repair, and responsible for neglecting that duty, unless there is something else in the way besides the action of the committee. There is nothing, therefore, in the preliminary objection taken by the counsel of the company.

Then is the relator entitled to have the rule for a *mandamus* made absolute? He comes as a public officer seeking to enforce a public right. The complaint is, that the Monmouth Plank Road Company have placed an obstruction in the public highway, whereby the public are prevented from using it in their accustomed manner, and he, as such public officer, is prevented from opening and clearing it out. But it is admitted that the company, in obstructing the free passage over the highway in the manner complained of, are assuming to act under the authority of a legislative grant, empowering them, on certain conditions, to take and appropriate the said road to their own use, for the purpose of converting it into a turnpike. And

it is admitted that the company have complied with the conditions prescribed by the legislature, so far as to have obtained the approval of a majority of the voters of the township and of a majority of the land-owners adjoining said road in the said township. These were the only conditions precedent to the right of appropriation.

But then the relator's counsel insists that this supplemental act, under which the appropriation is made by the company, is unconstitutional and void.

I. Because it provides, in substance, that the act shall not take effect unless a majority of the voters of the township through which the road runs shall, by their signatures, approve the same. The first section of the supplement enacts that the said company shall have full power and authority to take and appropriate to the uses of said company the public road leading, &c., provided it be made to appear to the satisfaction of the Inferior Court of Common Pleas of the county of Monmouth, on application to said court by a majority of the directors of said company, by due proof, that a majority of the voters of any township through which the said road runs, have, by their signatures, approved of the same, and that a majority of the land-owners adjoining said road in such township have in like manner approved the same.

But this is not a delegation of the law-making power by the legislature to the people. It is simply the grant of a power to an incorporated company to convert a common public road into a turnpike, upon condition that they obtain the consent of a majority of those supposed to be most immediately interested in the use of it. The legislative power over the whole subject of highways and internal improvements has usually been delegated, to some extent, to subordinate authorities. The subject of laying out, opening, altering and vacating public highways has been committed to the discretion of surveyors of highways and chosen freeholders elected by the people. The means for keeping them in repair has been left to be pro-

-vided for by the people themselves. The power of laying out new streets, and of altering and changing the grade of old ones, has repeatedly been delegated to municipal corporations, to be exercised on condition, often, of obtaining the consent of those most interested. And it has never been supposed that this course of legislation was in violation of the well-settled doctrine, that the legislative or law-making power could not be delegated to the people, but must be exercised exclusively by the legislative department of the government. To grant a franchise, or. to prescribe a mode by which individuals may become incorporated with certain franchises, is an exercise of power which must emanate from the legislature. But to accept such franchises, or to consent to the exercise of the powers granted on condition of such consent being obtained by third parties, is in no proper sense a legislative act. We are of opinion, therefore, that the act is not unconstitutional in this particular, and that this reason for a *mandamus* is not sustained.

II. It is urged, in the second place, that this supplement is in violation of the constitution, because it authorizes private property to be taken without compensation. It gives authority to the company to take and appropriate to their own use the public road in question, provided a majority of the land owners adjoining said road approve of such appropriation; and makes no provision for compensation to the land-owners over whose land the old road passed, and who do not consent, for damages they may sustain by this appropriation.

This certainly involves a serious question, and will doubtless receive a careful consideration, if ever it should come before us in proper form upon the complaint of proper parties. But the relator is not now here as a land-owner complaining that his land has been taken without compensation, or that a trespass has been committed, or a nuisance erected on it. So far, at least, as we can know judicially in this case, nobody complains of such a wrong, and no such case is before the court.

Morgan v. Monmouth Plank Road Co.

This question, therefore, cannot be decided here upon this application. An act is not necessarily void because it contains one unconstitutional feature. It is operative for all purposes except that in which it comes in conflict with the fundamental law; and in that particular the difficulty may be removed, or those affected by it may not choose to complain. There is nothing in the act to prevent the company and the land-owners from adjusting their differences, if any exist; the land-owners may consent to relinquish, or the company may extinguish, their rights. If this is done the courts would not interfere, though the case be ever so clear.

In *Wellington's case*, 16 *Pick.* 87, the Supreme Court of Massachusetts held that if an act of the legislature appears, on the face of it, to be an encroachment on the rights of any persons, but would nevertheless be valid if passed with the consent of those persons, the court is bound to presume that such consent was given, and this presumption must prevail in favor of the validity of the act until the contrary is shown, and shown, too, by a person having an interest in the maintenance of the rights supposed to be thus injuriously affected, and having a right to call for the interposition of the court for his support and protection; and a stranger can have no right to appear and contest the validity of the act upon such a ground. This is a well-settled rule, and its application is decisive upon this part of the case.

III. But, in the last place, it is insisted that the company have not complied with the conditions upon the performance of which, alone, they have authority, under the act, to close the old highway, and compel the payment of toll by those who desire to use the road, to the company; and that, on this ground, a *mandamus* should go.

The second section of the act authorizes the company, whenever they shall have obtained the approval of the voters and land-owners, as mentioned in the first section, to enter upon and take possession of the road, excavate,

make embankments, &c., and open the said road to its full width. The third section enacts that it shall be lawful for them to convert said road into a turnpike, provided the turnpike shall be at least thirty feet in width, sufficiently arched and drained, &c., and at least eighteen feet sufficiently bedded and faced with stone, gravel, &c. And the fourth section enacts that whenever, in the opinion of the board of chosen freeholders of said county, given in writing at any one of their regular meetings, the said plank road or turnpike road constructed upon the said public road· is not in the condition required by the charter of said company and this supplement, the said company shall cease to charge toll, and permit all persons to pass thereon free, until such road shall be properly repaired, and certified to by the director of the said board of freeholders of said county.

The company have taken possession of the road, have erected a toll gate, and have obstructed the entrance on the road, except that through their toll gate; and it is attempted to be shown here, by affidavits, that the road is not in the condition required by the charter and the supplement. But a *mandamus* is never allowed where there is another complete and perfect remedy provided for the mischief complained of. *State* v. *Halliday*, 3 *Halst.* 205. In this case the fourth section of the act furnishes a remedy, which may be readily applied to the mischief; and we cannot interfere in the way proposed.

The rule must be discharged.

CITED *in State* v. *Seymour*, 6 *Vr.* 56; *In matter of application between Lower Chatham and Little Falls*, 6 *Vr.* 506; *State* v. *Hudson Co. Ave.*, 8 *Vr.* 21.